UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RAWLE C. DOVER, A042681922,

                Petitioner,

                **DECISION AND ORDER**
                11-CV-508A

    v.

ERIC H. HOLDER et al.,

                Respondents.

---

**I.   INTRODUCTION**

Pending before the Court is a petition by petitioner Rawle Dover for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner seeks habeas corpus relief because he has been in continuous immigration custody since May 4, 2010. Petitioner contends that his native country of Guyana has not indicated when it will issue a travel document to complete his removal.  Without any such indication, according to petitioner, release pending final removal is necessary because his final removal is not reasonably foreseeable.  Respondents counter that they have the authority to detain petitioner given his criminal record and given his fugitive status the last time he was released pending removal. Additionally, respondents argue that a forbearance policy between them and the United States Court of Appeals for the Second Circuit is the only reason why they

have not completed petitioner's removal, and that the removal is otherwise foreseeable.

The Court has deemed the matter submitted on papers pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons below, the Court denies the petition.

## II.   BACKGROUND

This case concerns petitioner's efforts to end his immigration custody as he awaits final removal to his native country of Guyana. Petitioner is a citizen of Guyana who entered the United States at New York City on April 28, 1991 as a lawful permanent resident. Petitioner, however, laid the basis for his future removal proceedings with three criminal convictions during a 14-month span in 1996 and 1997. On February 28, 1996, petitioner was convicted in New York City of a criminal sale of marijuana in the fourth degree, in violation of N.Y. Penal Law § 221.40. On July 24, 1996, petitioner was convicted a second time in New York City under the same statute. Petitioner received a third conviction in New York City under that statute on April 30, 1997. Respondents appear not to have acted on petitioner's convictions immediately.

Respondents did act on petitioner's convictions when he attempted to enter Canada on August 19, 2004, and Canada refused him entry. On August 19, 2004, respondents charged petitioner under 8 U.S.C. § 1227(a)(2)(A)(iii) with being subject to removal as an alien convicted of an "aggravated felony," defined

in 8 U.S.C. § 1101(a)(43)(B) as an offense relating to illicit trafficking in a controlled substance. On August 30, 2004, respondents charged petitioner with the additional count of being subject to removal for conviction on a controlled substance offense, as set forth in 8 U.S.C. § 1227(a)(2)(B)(i). On September 10, 2004, respondents released petitioner on bail pending the outcome of removal proceedings. On October 6, 2005, petitioner was ordered removed. Petitioner appealed, but the Bureau of Immigration Appeals ("BIA") dismissed his appeal on September 25, 2007. Respondents set January 31, 2008 as petitioner's surrender date to prepare for final removal, but petitioner failed to surrender and became a fugitive.

Petitioner remained a fugitive until respondents found him in custody in the Rensselaer County Jail in Troy, New York on April 22, 2010. The record is not clear as to why petitioner was in criminal custody then. Nonetheless, respondents took petitioner into immigration custody upon his release from criminal custody on May 4, 2010. Respondents sent a presentation packet to Guyana on the same day, to secure a travel document for final removal. Petitioner has been in continuous immigration custody since May 4, 2010.

The record suggests that Guyana has delayed in issuing a travel document in part because it has awaited the outcome of petitioner's efforts to fight his removal. On June 1, 2010, petitioner filed a motion with BIA to reopen his removal proceedings. BIA denied the motion on July 13, 2010. On August 12,

2010, petitioner filed a petition for review and a motion for stay of removal with the Second Circuit. The Second Circuit denied that petition and motion on December 8, 2010. On December 16, 2010, petitioner filed another petition for review and motion for stay with the Second Circuit. That petition and motion are still pending. Meanwhile, respondents have conducted two annual reviews of petitioner's file and conducted one in-person interview. After these reviews, respondents determined to keep petitioner in custody. Respondents made that determination partly because they believe that his prior offense conduct and fugitive status make him a flight risk and a threat to the community. Respondents have kept petitioner in custody also because of an informal "forbearance policy" that they have with the Second Circuit. Under this forbearance policy, respondents agree not to remove any aliens who have matters open and pending before the Second Circuit. Respondents have indicated that Guyana likely will issue a travel document as soon as the Second Circuit rules on petitioner's second petition and motion before that court, assuming that the Second Circuit issues a denial.

     While petitioner has been awaiting the outcome of his second petition and motion before the Second Circuit, he filed his habeas corpus petition before this Court on June 17, 2011. In support of his petition, petitioner argues that Guyana has not signaled definitively when it will make a final decision about issuing a travel document. From there, petitioner argues that his final removal is not

4

reasonably foreseeable, meaning that his detention of 16 months and counting is constitutionally impermissible and has to end.  Respondents oppose petitioner's attempt to obtain habeas corpus relief by noting that, as far as they can tell, Guyana will issue a travel document as soon as the Second Circuit issues a ruling and the unofficial forbearance ends.  Respondents also note that petitioner should remain in custody because his prior criminal conduct makes him a danger to the community and because his prior fugitive status makes him a flight risk.

### III.   DISCUSSION

#### A.   *Immigration Habeas Corpus Proceedings Generally*

The general rules governing writs of habeas corpus in immigration cases are well known.  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).  "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . ." *Id.* § 2241(c)(3).  This Court, however, does not have jurisdiction to review the substance of petitioner's underlying removal proceedings.  "Notwithstanding any other provision of law (statutory or nonstatutory), *including section 2241 of Title 28, or any other habeas corpus provision*, . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial

5

review of an order of removal entered or issued under any provision of this chapter . . . ." 8 U.S.C. § 1252(a)(5) (emphasis added).

Accordingly, the Court will limit itself to reviewing petitioner's contention that his ongoing detention pending removal has exceeded constitutional limits.

**B.     *Fugitive Status / Danger to Community***

Petitioner argues for release pending removal on the grounds that he "has been in detention longer than six months after receiving a final removal order and ICE has been unable to carry out his removal.  Petitioner's consulate has not issued travel documents and there is no certainty as to when, if ever, such papers will be issued.  Thus, Petitioner's removal from the United States is not likely to occur within the reasonabl[y] foreseeable future." (Dkt. No. 1 at 8.)

"Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(1)(A).  Because respondent ordered petitioner removed under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i), an exception to the 90-day removal requirement applies.  "An alien ordered removed who is . . . removable under section . . . 1227(a)(2) . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . ." 8 U.S.C. § 1231(a)(6).  The plain language of Section 1231(a)(6), however, does not end the Court's analysis, because it theoretically

6

authorizes indefinite detention. To avoid constitutional invalidation, "we read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). The Supreme Court has set the presumptively reasonable period of additional detention at six months. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

This case features several circumstances that weigh in favor of continued detention at this time. Petitioner became removable under 8 U.S.C. § 1227 because he accumulated three drug offenses on his record within a span of 14 months. *Cf. Arthur v. Gonzales*, Nos. 07-CV-6158, 07-CV-6473, 2008 WL 4934065, at *15 (W.D.N.Y. Nov. 14, 2008) (Siragusa, *J.*) (citing a petitioner's

criminal history as a basis to continue detention under 8 U.S.C. § 1231(a)(6)). Respondents tried releasing him once before while he awaited final removal. Petitioner's response to this prior release was to become a fugitive for several years until he landed himself in jail again in 2010 and respondents found him there. *Cf. Garcia v. Heron*, No. 09-CV-416, 2009 WL 3231924, at *6 (W.D.N.Y. Oct. 1, 2009) (Telesca, *J.*) (denying an immigration habeas petition in part because "petitioner has a history of failure to comply with conditions of release as evidence by his violation of a previous order of supervision"). Respondents thus appear to have good reason to fear that releasing petitioner again will lead to another fugitive chase for someone who might return to drug activity. *See also* 8 C.F.R. § 241.4(e)(5–6) (prohibiting respondents from recommending release pending final removal unless "[t]he detainee is not likely to violate the conditions of release; and . . . [t]he detainee does not pose a significant flight risk if released."). At the same time—and critical to the analysis of reasonably foreseeable removal under *Zadvydas*—the record suggests that Guyana will issue a travel document for petitioner as soon as the Second Circuit resolves his latest petition and motion for a stay of removal. Given that the Second Circuit rejected that request from petitioner once before, a resolution of the pending petition and motion probably will not take long. Under these circumstances, the Court finds that there is no reason yet to be wary that petitioner's detention will extend indefinitely.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court denies the petition for a writ of habeas corpus (Dkt. No. 1).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. U.S.*, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of the Court shall close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: September 12, 2011